## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

MADISON AREA REHABILITATION
CENTER, INC., *a Wisconsin corporation*,

       Plaintiff,

vs.

DAY ONE FORMAL WEAR, INC., *a Wisconsin corporation*; NFW ENTERPRISES, INC., *a Wisconsin corporation;* ABC Insurance Company; DEF Insurance Company;

       Defendants.

**Case No. _____**

**COMPLAINT**

Plaintiff, Madison Area Rehabilitation Center, Inc. ("MARC"), by its attorneys, Davis & Kuelthau, s.c., as its complaint states as follows:

### INTRODUCTION

1.    This is an action for recovery of response costs, damages and declaratory relief arising from environmental contamination existing in the soil, soil vapor and groundwater at property formerly owned and/or operated by Defendants and/or their predecessors at 3939 Lien Road in Madison, Wisconsin ("the Property").

2.    Defendants Day One Formal Wear, Inc. ("Day One") and Nedrebos Formal Wear, Inc., now known as NFW Enterprises, Inc. ("Nedrebos") are both former owners and/or operators of the Property and caused or contributed to the environmental contamination that is present on and around the Property.

3.    Defendants ABC Insurance Company and DEF Insurance Company are fictitiously named insurance liability carriers who sold, issued, and delivered professional liability insurance policies to defendants Day One and Nedrebos, respectively, at all times relevant hereto.  Pursuant

to state statute, once the identities of these insurers are ascertained, they will be substituted into place for the fictitious names as though originally pled.

4.      Plaintiff MARC is the current owner of the Property and brings this civil action pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), to recover response costs incurred by MARC and for declaratory judgment for future damages from all Defendants pursuant to 42 U.S.C. § 9613(g)(2).

5.      MARC further seeks relief based on pendent state law claims of negligence, nuisance, and equitable or common law contribution.

## THE PARTIES

6.      Plaintiff MARC is a Wisconsin corporation with its principal place of business located in Madison, Wisconsin.  MARC is an approved 501(c)(3) organization registered as a charitable organization in Wisconsin.

7.      MARC owns the Property located at 3939 Lien Road in Madison, Wisconsin.

8.      Defendant Day One was a Wisconsin corporation incorporated as Day One Formal Wear, Inc. in September 1977.

9.      Day One leased the Property from MARC's predecessors in interest and original developers of the Property, the late Richard and Bonnie Young and their late son, Steven Young (collectively, "the Youngs") from 1980, or possibly earlier, until 1987.

10.     Day One sold its assets to Defendant Nedrebos Formal Wear, Inc., in January 1988.

11.     NFW Enterprises, Inc. is a Wisconsin corporation with its principal offices located at 715 Farwell Dr., Madison Wisconsin.

12.     Upon information and belief, NFW Enterprises, Inc. was formally known as Nedrebos Formal Wear, Inc.

13.     On information and belief, Nedrebos operated as a continuation of Day One's business as Bridal Day Bridal Shop from January until December 1988 at the Property and leased the Property from the Youngs during this time.

14.     MARC entered into a land contract with the Youngs to purchase the Property in December 1988 and took title in July 1989.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over the claims set forth in this complaint under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a); 28 U.S.C. § 1331, the federal question jurisdiction statute; and 28 U.S.C. § 1367, providing for pendent jurisdiction over state law claims.

16.     This Court has personal jurisdiction over Defendants and is the appropriate venue under 28 U.S.C. § 1391(b)(2); and 42 U.S.C. § 9613; The Property is located within this District, and multiple Defendants reside in this District.

## FACTUAL ALLEGATIONS

A.     **The Property**

17.     The Property consists of a single parcel, which is occupied by a single-story building.

18.     From 1988 to 2014, MARC used the Property as a rehabilitation center for individuals with intellectual disabilities.

19.     In 2013, MARC put the property up for sale and subsequently moved its rehabilitation center to a new location. For a period, MARC used the Property for storage and as the base for its community services before leasing the property to a local church.

3

B.      **Environmental Investigation of the Property**

20.     At the time of MARC's purchase of the Property, MARC did not have any notice or knowledge of the presence of contamination at the Property and none was disclosed at the time of sale.

21.     On information and belief, none of the Defendants reported to either state or federal regulators that any hazardous substances had been discharged to the environment at the Property during their periods of ownership or operation.

22.     MARC discovered contamination at the Property as part of its due diligence activities to prepare for a potential sale of the Property.

23.     An initial sampling of soil from the Property contained Tetrachloroethene ("PCE").

24.     An initial sampling of groundwater from the Property contained PCE and its breakdown compound, Trichloroethene ("TCE"), in excess of the enforcement standard ("ES") established by the Wisconsin Department of Natural Resources ("WDNR").

25.     PCE and TCE are both chemical contaminants associated with dry cleaning operations.

26.     As required under Wis. Stats. § 292.11, on or about June 22, 2015, MARC notified WDNR of the presence of the PCE contamination.

27.     On or about August 15, 2015, the WDNR issued a responsible party letter to MARC, requiring MARC to investigate the nature and extent of the contamination and to remediate the contamination to the extent practicable.  The WDNR also entered the property into its Bureau for Remediation and Redevelopment Tracking System ("BRRTS") and assigned the tracking number 02-13-564044.

28.     To date, MARC has incurred costs in excess of $100,000 to investigate and remediate the contamination at the Property as required by the WDNR.  MARC will likely incur additional costs related to these efforts in the future.

**C.    Day One's Operation and Pollution of the Property**

29.     The Youngs were the original developers of the Property and leased it to several operations beginning in approximately 1975 until the sale to MARC.

30.     From at least 1980 until 1987, the Property was leased by Day One.

31.     Day One's operations included on-site dry cleaning, which used materials that now contaminate the groundwater and soil at the Property.

32.     The location and nature of the contamination demonstrate that the release of these substances was associated with Day One's operations at the Property.

33.     Day One disposed, arranged for disposal, dumped, spilled, abandoned, and/or released pollutants, contaminants, hazardous wastes and/or hazardous substances, including but not limited to PCE and TCE, thus contaminating the soil and groundwater located at the Property.

34.     The PCE and TCE found in the soil and groundwater at the Property are, or are evidence of, the disposal of, solid and hazardous waste by Day One.

35.     Day One generated and contributed to the past or present handling, storage, treatment, transportation, or disposal of solid or hazardous waste and hazardous substances at the Property, which may present an imminent and substantial endangerment to health or the environment.

36.     Day One caused, participated in and made decisions about the use, handling, storage and disposal of hazardous substances, solid and hazardous waste that resulted in contamination of the Property.

37.     When Day One sold its assets and ceased its operations at the Property in 1988, it did not undertake to remediate the Property despite having left substantial contamination in the Property's soil and groundwater.

38.     In a letter dated November 1, 2017, MARC gave notice to Day One of the contamination at the Property and provided notice of its intent to file a claim against Day One, demanding compensation for costs incurred to investigate and clean up the Property, and that Day One pay for costs of remediation at the Property going forward.

**D.     Nedrebos' Operation and Pollution of the Property**

39.     In January 1988, Day One sold its assets to Nedrebos Formal Wear, Inc.

40.     Upon information and belief, through a series of corporate transactions, NFW Enterprises, Inc. is now the successor in interest to Nedrebos Formal Wear, Inc.

41.     Following the sale of Day One's assets to Nedrebos, upon information and belief, Nedrebos leased the Property from the Youngs until the property was sold to MARC.

42.     During its lease from the Youngs, Nedrebos operated Bridal Day Bridal Shop at the Property.

43.     Upon information and belief, Nedrebos' operations of Bridal Day Bridal Shop continued the use of Day One's on-site dry cleaning at the Property, which used materials that now contaminate the soil and groundwater at the Property.

44.     Upon information and belief, the location and nature of the contamination demonstrate that the release of these substances was associated with Nedrebos' operations at the Property.

45.     Upon information and belief, Nedrebos disposed, arranged for disposal, dumped, spilled, abandoned, and/or released pollutants, contaminants, hazardous wastes and/or hazardous

substances, including but not limited to PCE and TCE, thus contaminating the soil and groundwater located at the Property.

46.     Upon information and belief, the PCE and TCE found in the soil and groundwater at the Property are, or are evidence of, the disposal of, solid and hazardous waste by Nedrebos.

47.     Upon information and belief, Nedrebos generated and contributed to the past or present handling, storage, treatment, transportation, or disposal of solid or hazardous waste and hazardous substances at the Property, which may present an imminent and substantial endangerment to health or the environment.

48.     Upon information and belief, Nedrebos caused, participated in and made decisions about the use, handling, storage and disposal of hazardous substances, solid and hazardous waste that resulted in contamination of the Property.

49.     Upon information and belief, when Nedrebos ceased its operations at the Property in 1988, it did not undertake to remediate the Property despite having left substantial contamination in the Property's soil and groundwater.

E.     **MARC's Acquisition of the Property and Development of a Remediation Plan**

50.     In December 1988, MARC entered a land contract to purchase the Property from the Youngs.

51.     The Youngs did not inform MARC at any point prior to the sale of the Property of any potential contamination or dry cleaning activities that had occurred at site.

52.     None of the Defendants have taken any action to clean up the contamination that they released into the soil, groundwater, soil vapor and buildings at the Property to date.

53.     MARC has conducted an ongoing investigation into the contamination at the Property and continues to work with the WDNR to remediate the Property to a level appropriate

for reuse.  All activities have been conducted in accordance with Chapter NR 700 of the Wisconsin Administrative Rules.

54.     MARC has incurred costs associated with the investigation of the contamination of the Property, identifying potentially responsible parties for the contamination at the Property, and developing remediation strategies to address the contamination of the Property.

55.     MARC has never used or stored hazardous substances at the Property.

56.     MARC has fully cooperated with WDNR in conducting the necessary investigation and remediation activities at and around the Property.

57.     MARC continues to incur response costs for work at the Property, and is likely to incur additional reasonable and necessary cost in the future until the impacts of the contamination at and around the Property are remediated.

58.     As a result of MARC's ongoing investigation and remediation of the contamination at the Property, it has been unable to sell the Property.

**COUNT I**
**COST RECOVERY UNDER CERCLA**
**42 U.S.C. § 9607(A)**

*Against all Defendants*

59.     MARC incorporates herein by reference each of the allegations in this Complaint as if fully stated herein.

60.     MARC is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

61.     MARC is entitled to recover from Defendants, pursuant to 42 U.S.C. § 9607(a), response costs incurred by MARC in connection with the environmental response effort at the Property.

62.     A "disposal" and "release" of "hazardous substances" into the "environment" has occurred at the Property as defined by Sections 101(8)(14), (22), and (29) of CERCLA, 42 U.S.C. §§ 9601(8)(14), (22), and (29).

63.     The Property constitute a "facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

64.     The disposal and release of hazardous substances in connection with the Property have caused and will continue to cause MARC to incur necessary response costs consistent with the National Contingency Plan ("NCP").

65.     Defendants are responsible parties under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as past owners and/or operators of the Property at the time of disposal of hazardous substances and as an arranger for disposal of hazardous substances at the Property.

66.     Defendants owned and/or operated the Property during these approximate time frames:

Day One: 1980 to 1987

Nedrebos: 1988

67.     Under CERCLA Section 107(a)(4)(B), Defendants are jointly and severally liable for reasonably and necessary costs of response under 42 U.S.C. § 9607(a)(4)(B).

68.     Accordingly, MARC is entitled, pursuant to CERCLA, 42 U.S.C. § 9607(a), to recover its past and future response costs in connection with the Property from Defendants.

69.     Pursuant to Section 113(l) of CERCLA, 42 U.S.C. § 9613(l), MARC has provided a copy of this Complaint to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency.

**COUNT II**
**DECLARATORY RELIEF UNDER CERCLA**
**42 U.S.C. 9613(A)**

***Against all Defendants***

70.     MARC incorporates herein by reference each of the allegations in this Complaint as if fully stated herein.

71.     Because the extent and magnitude of the contamination at the Property is still being investigated and has not yet been cleaned up, MARC will continue to incur necessary response costs in the future.

72.     Pursuant to 42 U.S.C. § 9613, MARC is entitled to a declaratory judgment establishing the joint and several liability of Defendants for such response costs for the purposes of this and any subsequent action or actions to recover further response costs.

**COUNT III**
**NEGLIGENCE**

***Against all Defendants***

73.     MARC incorporates herein by reference each of the allegations in this Complaint as if fully stated herein.

74.     Defendants failed to exercise due care in their handling, storage, use, containment and disposal of hazardous substances, pollutants and contaminants used in or generated by their operations at the Property.

75.     Defendants failed to exercise their due care by dumping, spilling, leaking, pouring, emitting or depositing contaminants in the soil and groundwater at and around the Property.

76.     Defendants' conduct resulted in spills and has caused hazardous substances, pollutants and contaminants to be deposited in the soil and groundwater at and around the Property.

77.     Defendants knew, or in the exercise of reasonable care, should have known that as a result of their activities, hazardous substances, pollutants and contaminants were substantially certain to be released to the Property, causing or contributing to contamination at and around the Property.

78.     Defendants also had a duty to exercise reasonable care in addressing the known contamination at the site.

79.     On information and belief, Defendants failed to exercise due care required in responding to the known contamination at the Property and did not take the steps necessary to mitigate, clean up, and stop continuing migration of the contamination.

80.     As a direct and proximate cause of Defendants' acts and omissions with respect to their handling of contaminants at the Property, MARC has sustained injuries and damages in an amount to be determined at trial.

## COUNT IV
## NUISANCE

### *Against all Defendants*

81.     MARC incorporates herein by reference each of the allegations in this Complaint as if fully stated herein.

82.     MARC has a right and is entitled to the use and enjoyment of the Property.

83.     Defendants, through their negligent conduct, released or caused to be released hazardous substances, pollutants and contaminants to the Property, which has resulted in conditions that are hazardous to human health and the environment.

84.     These releases of hazardous substances, pollutants and contaminants constitute a nuisance as they interfere substantially with the comfortable enjoyment of life, health and safety of others and further interferes with MARC's use and enjoyment of the Property.

85.     Defendants' conduct and the contaminants they left behind constitute an ongoing and continuing nuisance, for which Defendants are responsible to abate.

86.     As a direct and proximate result of the Defendants creation of a nuisance, MARC has suffered damages for which Defendants are liable in an amount to be determined at trial.

**COUNT V**
**EQUITABLE CONTRIBUTION**

***Against all Defendants***

87.     MARC incorporates herein by reference each of the allegations in this Complaint as if fully stated herein.

88.     Defendants have caused or contributed to the release of hazardous substances, pollutants and contaminants on the Property.

89.     Defendants have created and maintained a public and private nuisance.

90.     MARC, as the current party in possession and control of the Property, shares a common liability with Defendants, as the parties that caused the contamination, to the State of Wisconsin and the public, to investigate and remediate the contamination at the Property.

91.     MARC has paid more than its equitable share of the costs related to the investigation and remediation of the Property and is entitled to restitution from the Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, MARC demands judgment as follows:

A.      A judgment in favor of MARC and against Defendants awarding compensatory damages, with interest and costs (including reasonable attorney fees), in an amount to be proven at trial;

B.      An Order under Section 107 of CERCLA, 42 U.S.C. § 9607, requiring Defendants to reimburse MARC for all past and future response costs, including the costs of investigation, remediation and/or removal activities address releases and threatened releases of hazardous substances at the Property.

C.      An Order under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), requiring Defendants to reimburse MARC for all preliminary investigative costs related to releases of hazardous substances at the Property;

D.      A declaratory judgment that Defendants are liable to MARC for all past and future response costs in response to the releases or threatened releases of hazardous substances at the Property;

E.      An injunction under Section 1007(a) of RCRA, 42 U.S.C. § 6972(a) requiring Day One to abate any imminent and substantial risk to health and the environment that may exist at the Property as a result of Day One's contribution to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste at the Property;

F.      An Order requiring Defendants to abate and/or remediate all pollution and/or threatened pollution at, around and/or from the Property, and an Order requiring Defendants to pay MARC for all damages incurred by MARC as the result of the pollution;

G.      An Order requiring Defendants to pay MARC pre-judgment interest on all costs and damages to be paid to MARC;

H.      An Order awarding to MARC all costs associated with this action, including, but not limited to reasonable attorney fees and any expert or consulting fees;

I.      Such additional and further relief in favor of MARC as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff, Madison Area Rehabilitation Center, Inc., demands trial by jury by the maximum number of jurors permitted by law.

Dated:  March 12, 2021                    By:       *s/M. Andrew Skwierawski*
                                                                Ted A. Warpinski (WI SB #1018812)
                                                                DAVIS & KUELTHAU, s.c.
                                                                318 South Washington Street, Suite 300
                                                                Green Bay, WI  54301
                                                                T:  920-431-2236
                                                                E: TWarpinski@dkattorneys.com

                                                                M. Andrew Skwierawski (WI SB#1063902)
                                                                DAVIS & KUELTHAU, s.c.
                                                                111 East Kilbourn Avenue, Suite 1400
                                                                Milwaukee, WI  53202
                                                                T:  414-276-0200
                                                                E: askwierawski@dkattorneys.com